## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| ERIC DRAKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 2:21-cv-02636-JTF-atc |
| | ) | |
| FREDERICK W. SMITH | ) | |
| FEDEX CORPORATION, | ) | |
| BARBARA GOLDEN LYNN, MICHAEL | ) | |
| PAIGE LYNN, SAM ALLEN LINDSAY, | ) | |
| DAVID C. GODBEY, JAMES EDGAR | ) | |
| KINCAIDE, JANE ELLEN JACKSON | ) | |
| BOYLE, REED O'CONNOR, KAREN | ) | |
| GREN SCHOLER, MATTHEW J. | ) | |
| KACSMARYK, MARK TIMOTHY | ) | |
| PITTMAN, JAMES WESLEY HENDRIX, | ) | |
| BRANTLEY STARR, ADA BROWN, A. | ) | |
| JOE FISH, SIDNEY A. FITZWATER, SAM | ) | |
| R. CUMMINGS, JOHN H. MCBRYDE, | ) | |
| TERRY R. MEANS, IRMA CARRILLO | ) | |
| RAMIREZ, JEFFREY L. CURETON, | ) | |
| RENEE HARRIS TOLIVER, | ) | |
| DAVID L. HORAN, HAL R. RAY, JR., | ) | |
| LEE ANN RENO, REBECCA | ) | |
| RUTHERFORD, JOHN R. PARKER, | ) | |
| JAMES DAVID FOLSOM, CAROLINE | ) | |
| CRAVEN, ROBERT SCHROEDER III, | ) | |
| FGPS, FEDEX COPORATE SERVICES, | ) | |
| INC., WARREN LLOYD VAVRA, | ) | |
| MARICELA MOORE, | ) | |
| SCOT MACDONALD GRAYDON, and | ) | |
| TONYA PARKER, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ADOPTING IN PART, REJECTING IN PART, AND MODIFYING IN PART
## THE UNITED STATES MAGISTRATE JUDGE'S REPORTS AND
## RECOMMENDATIONS

1

On October 7, 2021, Plaintiff Eric Drake filed a *pro se* Complaint raising numerous claims against Defendants FedEx Corporation, FedEx Corporate Services, and Frederick W. Smith.[1] (ECF No. 1.)  On November 1, 2021, the Defendants filed a Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim.  (ECF No. 11.) Drake responded with a flurry of filings on November 22, 2021: a Motion to Extend Time to Serve Defendants, (ECF No. 12), a Response to the Motion to Dismiss, (ECF No. 13), a Motion for Leave to Offer Evidence and Proof, (ECF No. 14), a Motion for Leave to Take Depositions In-Person and or by Zoom, Prior to Ruling on Dispositive Motion and Request Evidentiary Hearing, (ECF No. 15), and finally an Amended Complaint against All Defendants, (ECF No. 16). The Defendants filed a single joint response to these motions on December 3, 2021. (ECF No. 21.) That same day, the Defendants filed a new Motion to Dismiss and a Motion to Strike the Amended Complaint. (ECF Nos. 19 & 20.) Drake next filed a Motion for Sanctions and a Motion for Extension of Time to File Response/Reply to FedEx's new Motion to Dismiss, and a "Plaintiffs' Request Court's Opinion of Whether the Actions of the FEDEX Driver Repetitive Use of the 'N' Word Amounts to Race Discrimination," all on December 13, 2021. (ECF Nos. 22, 23, & 24.) The Court then referred all outstanding motions in the case to the assigned Magistrate Judge on December 16, 2021. (ECF No. 26.) The Defendants filed responses to the Motion for Extension of Time to File Response/Reply and the Motion for Sanctions on December 21, 2021, (ECF Nos. 29 & 30), as well as a Supplemental Motion to Strike on the same day, (ECF No. 31.) Drake filed his responses to the new Motion to Dismiss and the Motions to Strike, (ECF Nos. 34 & 35), as well as his replies to the Defendants'

---

[1] Drake's complaint lists forty-nine defendants in total and twenty-two separate causes of action, but all stem from one instance of alleged race discrimination. Drake states no claims against any Defendants besides the FedEx Defendants, and they are *sua sponte* **DISMISSED** from the case.

prior responses, (ECF Nos. 36 & 37), on January 3, 2022. The Defendants filed a final reply to Drake's "Request" on January 11, 2022. (ECF No. 39.)

The Magistrate Judge issued a Report and Recommendation ("R & R") addressing all of the above cross-motions on August 23, 2022. (ECF No. 40.) The R & R recommended denying the Defendants' Motion to Dismiss as to Drake's § 1981 and declaratory judgment claims, declining to dismiss Drake's state law claims, granting the Motion to Dismiss as to Drake's Title II claims, granting the Defendants' Motion to Strike and Supplemental Motion to Strike regarding paragraphs 52-57, 154, 227, and 228-242 of the Amended Complaint, Denying Drake's Motion for Sanctions, and Dismissing all judicial defendants from the action pursuant to Federal Rule of Civil Procedure 12(b)(1). (*Id.* at 37.) The Magistrate Judge also separately ordered that the first Motion to Dismiss be denied as moot, Drake's Motion to Review Submitted Pleadings be denied as moot, Drake's Motion for Leave to Take Depositions In-Person and or by Zoom be denied, Drake's Motion for Leave to Offer Evidence and Proof be denied, and Drake's Motion to Extend Time to Serve Defendants be granted only as to 3 specified defendants. (*Id.* at 37-38.) The Defendants filed a Motion for Extension of Time to file Response/Reply to the Report and Recommendations on August 25, 2022, (ECF No. 41), which the Court granted on August 26, 2022, (ECF No. 42.) Drake filed "Plaintiff's Revised Demand for Damages Against FedEx," which the Court construes as his objections to the R & R, on September 6, 2022. (ECF No. 43.) The Defendants filed their objections on September 13, 2022. (ECF No. 44.) With the R & R now ripe for review, the Court hereby **ADOPTS IN PART, REJECTS IN PART,** and **MODIFIES IN PART** the R & R, ultimately dismissing all of Drake's claims except those under 5 U.S.C. § 1981 and granting Drake leave to file an amended complaint **with only FedEx Ground listed as the proper defendant.**

## I.   **LEGAL STANDARD**

Congress passed 28 U.S.C. § 636(b) "to relieve some of the burden on the federal courts by permitting the assignment of certain district court duties to magistrates." *United States v. Curtis*, 237 F.3d 598, 602 (6th Cir. 2001). Pursuant to the provision, magistrate judges may hear and determine any pretrial matter pending before the Court, except various dispositive motions. 28 U.S.C. § 636(b)(1)(A). Upon hearing a pending matter, "the magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1); *See also Baker v. Peterson*, 67 Fed. App'x 308, 310 (6th Cir. 2003). Any party who disagrees with a magistrate judge's proposed findings and recommendations may file written objections to the report and recommendations. Fed. R. Civ. P. 72(b)(2). A "failure to identify specific concerns with a magistrate judge's report results in treatment of a party's objection as a general objection to the entire magistrate judge's report. A general objection is considered the equivalent of failing to object entirely" or waiver. *McCready v. Kamminga*, 113 Fed. App'x 47, 49 (6th Cir. 2004.) In *McCready*, the Court noted that McCready only managed in his "rambling, 143-page objection" to, repeatedly and inappropriately, insult the magistrate judge, demand acceptance of his factual and legal conclusions as accurate, characterize the defendants as liars, and threaten the district court if his action was dismissed. *Id*. In the end, the court found that McCready's objections were general in nature and therefore amounted to a failure by McCready to object at all.

The standard of review that is applied by a district court when considering a magistrate judge's proposed findings and recommendations depends on the nature of the matter(s) considered by the magistrate judge. *See Baker v. Peterson*, 67 Fed. App'x 308, 310 (6th Cir. 2003) (citations omitted) ("A district court normally applies a 'clearly erroneous or contrary to law' standard of

review for non-dispositive preliminary measures.  A district court must review dispositive motions under the *de novo* standard."). Where timely, specific objections are filed, the parts objected to are reviewed under a *de novo* standard. *Rugiero v. United States*, 330 F. Supp. 2d 900, 904 (E.D. Mich. 2004). Upon a review of the evidence, the district court may accept, reject, or modify the proposed findings or recommendations of the magistrate judge.  *Brown v. Board of Educ.*, 47 F. Supp. 3d 665, 674 (W.D. Tenn. 2014); *see also* 28 U.S.C. § 636(b)(1). The court "may also receive further evidence or recommit the matter to the [m]agistrate [j]udge with instructions." *Moses v. Gardner*, No. 2:14-cv-2706-SHL-dkv, 2015 U.S. Dist. LEXIS 29701, at *3 (W.D. Tenn. Mar. 11, 2015). Again, a district judge should adopt the findings and rulings of the magistrate judge to which no specific objection under Fed. R. Civ. P. 72(b) is filed.  *Brown*, 47 F. Supp. 3d at 674. An objection to a magistrate judge's report and recommendation that does nothing more than state a disagreement with the magistrate judge's suggested resolution, or simply summarizes what has been presented before, is not an objection, as required to preserve the right to appeal a subsequent order of the district court adopting the report.  *J.A. v. Smith County School District*, 364 F. Supp. 3d 803, 811–12 (M.D. Tenn. 2019).

1.  <u>Standard of Review for Failure to State a Claim</u>

At the outset, to avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *See also* Fed. R. Civ. P. 12(b)(6). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F. 3d 365,

369 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Without factual allegations in support, mere legal conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679.

*Pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers and are thus liberally construed. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). However, *pro se* litigants must adhere to the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Also, the court cannot create a claim that has not been spelled out in a pleading. *Brown v. Matauszak*, 415 Fed. App'x 608, 613 (6th Cir. 2011); *Payne v. Sec'y of Treas.*, 73 Fed. App'x 836, 837 (6th Cir. 2003).

2. *Standard of Review for Lack of Subject Matter Jurisdiction*

"Federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009). Also, courts have the discretion to refuse to accept allegations in a complaint that are "clearly baseless," a term encompassing claims that may be described as "fanciful, fantastic, delusional, wholly incredible, or irrational." *Bumpas v. Corr. Corp. of America*, No. 3:10-1055, 2011 WL 3841674, at *8 (M.D. Tenn. Aug. 30, 2011) (citing *Denton v. Hernandez*, 504 U.S. 25, 32–33, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992)). As noted, "a district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion. Plaintiff need not be given an opportunity to amend when a case is dismissed *sua sponte* on this basis." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). When a court determines that it lacks subject matter jurisdiction, the court has an obligation to dismiss the case. Fed. R. Civ. P. 12(h)(3).

## II. <u>FACTUAL FINDINGS</u>

The Magistrate Judge has provided an extensive overview of the facts and circumstances alleged in Drake's filings within the pending Report and Recommendations. The Magistrate Judge submits that Drake's complaints stem from "an interaction he had with Cole Brewster, who Drake asserts was delivering packages for FedEx on December 16, 2020, in Dallas, Texas." (ECF No. 40, 4.)  Drake alleges he arrived at a UPS store to retrieve a package that was to be delivered there by FedEx, and that he approached Brewster, who was driving a FedEx branded truck, to see if the package was in the truck. (*Id.* at 5.) After some initial dismissiveness, Drake followed Brewster into the store and picked up a package, although not the one he had been expecting. (*Id.*) Upon exiting the store, Brewster became belligerent, calling Drake "nigger" and "crusty old nigger" and threatening him physically while assuming a "fighting stance." (*Id.*) Drake eventually walked away, put the package in his vehicle, and went back to collect the license plate information from the truck, at which point Brewster continued to harass Drake with racist language and threats. (*Id.*) Drake reported the incident at a FedEx location in Mesquite, Texas, and sent an email to Defendant Frederick Smith about the incident, but never received a response. (*Id.*) Drake asserts that he is owed roughly $7 billion in total damages because of the incident, due to his "contract with FedEx to deliver a package to him" and because he "paid FedEx to deliver his package and the services thereof, but FedEx violated that contract." (*Id.*)

The Defendants objected to only two specific portions of the Magistrate Judge's factual findings. First, the Defendants argue that the "Findings of Fact should be revised to clarify that [Defendant Frederick] Smith is the Executive Chairman of the Board of the FedEx Corporation, not part of an undefined 'FedEx' corporate entity[.]" (ECF No. 44, 3.) Second, they argue that the Facts should "state that Cole Brewster was delivering packages on behalf of FedEx Ground to the

UPS Store and other business in the area and identify the truck as a FedEx Ground truck." (*Id.*) Drake did not file specific objections to any of the findings of fact.

The thrust of all of the Defendants' objections is the alleged failure of the Findings of Fact to adequately distinguish different companies and persons within FedEx's corporate structure. "Lumping the 'FedEx-related' defendants together . . . led to critical errors in the conclusion of law," they argue. (*Id.* at 4.) Drake's complaint was filed against FedEx Corporation, which is "the parent corporation of multiple FedEx companies[,]" FedEx Corporate Services, which is "a wholly owned subsidiary of FedEx Corporation," and Frederick Smith, who is "well-known as the founder and Executive Chairman of the Board of Directors for FedEx Corporation."[2] (*Id.*) Brewster, the Defendants argue, was "employed by an independent service provider that contracted with FedEx Ground [Package Systems, Inc.]," which is "a separate operating company [that] does deliver packages to homes and business." (*Id.* at 5.) In support of Brewster's employment status, the Defendants point to three photographs included in the complaint that show Brewster wearing a FedEx Ground uniform and driving a FedEx Ground truck. (*Id.*) (citing ECF No. 16, 14-15.) They further cite the Declaration of Hilary Davis, attached to their Motion to Dismiss as an exhibit, which claims that "Brewster was an employee of McCabe Delivery, Inc. ("McCabe"), an independent service provider that contracted with FedEx Ground to deliver packages." (ECF No. 19-2, 1.)

The Court accepts that the distinctions between the FedEx corporate defendants and Smith are relevant to the present motion and adequately shown by public records and documents that it may judicially notice and consider. Accordingly, the Magistrate Judge's Findings of Fact are

---

[2] The Defendants cite their own website and Annual Reports in support of this structure, records the Court takes judicial notice of for the purposes of this motion. *Total Benefits Planning Agency Inc. v. Anthem Blue Cross & Blue Shield*, 630 F. Supp. 2d 842, 849 (S.D. Ohio 2007).

**MODIFIED** to clarify the above distinctions regarding FedEx's corporate structure. However, the Magistrate Judge was correct to not consider the attached declaration of Hilary Davis. The Defendants note that "documents a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." (ECF No. 44, 2) (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)). This is a correct statement of law, but Davis's declaration fails to satisfy those requirements. Davis's declaration was not referred to in Drake's complaint, and "matters outside the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss." *Weiner*, 108 F.3d at 88 (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)); *see also Al Ghadeer Meat Market Inc. v. United States, Dep't of Agriculture*, No. 2:19-cv-12131, 2020 WL 12574967, at *2 (E.D. Mich. Aug. 5, 2020). All of Davis's statements regarding Brewster's employment, FedEx's corporate structure, or the underlying facts must be disregarded for purposes of the motion.

Finally, the Defendants object to the Magistrate Judge's conclusion that "the facts that form the basis of the complaint span from pages twelve to twenty-six,", since pages 20-26 of the Amended Complaint do not contain factual statements, but instead "are a litany of attacks against Messrs. Smith and Babcock, Drake's opinions on free speech etc., and legal citation." (ECF No. 44, 5.) Upon review of the Amended Complaint, the Court agrees with the Defendants that pages 20-26 are not factual statements. While they do repeat facts already alleged earlier in the complaint, they consist mostly of legal arguments or conclusory statements regarding Drake's belief that his free speech rights have been violated. Accordingly, the Court **MODIFIES** the Proposed Findings of Fact to note that paragraphs 29-44 of the Amended Complaint reflect the facts of the case.

Neither party objected to any other portion of the facts. After review, the court finds no clear error and **ADOPTS** the remainder of the Magistrate Judge's Proposed Findings of Fact.

### III.    LEGAL ANALYSES

*1.  Unobjected to Portions of the R & R*

As an initial matter, the Court notes again that a district judge should adopt the findings and rulings of the magistrate judge to which no specific objection under Fed. R. Civ. P. 72(b) is filed.  *Brown*, 47 F. Supp.3d at 674 (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)). Below, the Court will address all of the specific objections made against the R & R and will review those areas *de novo*. *See* 28 U.S.C. § 636(b)(1). The unobjected to portions of the R & R are **ADOPTED**. Thus, Drake's claims under Title II are **DISMISSED**. All judicial defendants named in the complaint are **DISMISSED**. Finally, Drake's Motion for Sanctions is **DENIED**. As neither party objected to the Magistrate Judge's Orders, they stand as the ruling of the Court.

*2.  The Report and Recommendation Regarding Diversity Jurisdiction*

Drake did not file any formal objections to the R & R but did submit a filing titled "Plaintiff's Revised Demand for Damages Against FedEx" after the R & R was entered. (ECF No. 43.) In this filing, Drake states that in light of other cases he has read, "the Plaintiff have decided to reduce his demand against FedEx to the amount of $6 Million Dollars . . . including emotional distress and punitive damages." (*Id.* at 2.) This reduction in demand could, generously, be viewed as an Objection to the R & R's finding that Drake's original damages claim, which was for "multiple billions of dollars in damages," was "unattached to any articulated harms and untethered to reality."   This led the Magistrate Judge to find that Drake had not established diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 40, 12); *see Jennings v. Ford Motor Co.*, 56 F.3d 64, 1995 WL 299049, at *1 (6th Cir. 1995) (unpublished table opinion) (request for $10 million in damages from an alleged verbal and physical assault by a supervisor "so excessive in comparison with the facts alleged in support of the claim as to evidence a lack of good faith" and deny diversity

10

jurisdiction). While not required to, the Court will review this section *de novo*, construing Drake's filing as an objection.

After a review of the record, the Court nevertheless agrees with the Magistrate Judge that Drake's damages request is so excessive as to evidence a lack of good faith and deny diversity jurisdiction. Drake alleges verbal harassment by Brewster, and that Brewster took a fighting stance threatening Plaintiff Drake "and appeared to be ready to cause the Plaintiff physical harm."  ECF No. 16, 14.)  However, Drake never alleges any unwanted physical touching or contact, or that he lost property sufficient enough to justify $6 million in damages. The Court agrees with the Magistrate Judge that diversity jurisdiction under § 1332 does not attach and **ADOPTS** that section of the R & R.

3.   *The Report and Recommendation Regarding Drake's § 1981 claims*

Many of the Defendants' objections to the R & R involve the Magistrate Judge's finding that Drake has sufficiently stated a claim under 42 U.S.C. § 1981. This law protects the right of all persons in the United States to make and enforce contracts regardless of race. Relevant to Drake's claim, the Sixth Circuit has adopted the following test to determine whether a plaintiff has stated a *prima facie* case of discrimination regarding a commercial establishment under § 1981:

    (1) Plaintiff is a member of a protected Class
    (2) Plaintiff sought to make or enforce a contract for services ordinarily provided
        by the defendant; and
    (3) Plaintiff was denied the right to enter into or enjoy the benefits or privileges of
        the contractual relationship in that
        a.  Plaintiff was deprived of services while similarly situated persons
            outside the protected class were not and/or
        b.  Plaintiff received services in a markedly hostile manner and in a manner
            which a reasonable person would find objectively discriminatory.

*Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001). In determining whether conduct is "markedly hostile," courts consider whether the conduct is "(1) so profoundly contrary to the manifest financial interests of the merchant and/or her employees; (2) so far outside of

widely-accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination." *Keck v. Graham Hotel Systems, Inc.*, 566 F.3d 634, 641 (6th Cir. 2009). Unlike under Title VII claims for race discrimination, individual defendants can be held liable under § 1981 claims, so long as the plaintiff can prove that the defendant's "discrimination was intentional and that [the defendant] was personally involved in the discriminating conduct." *Wagner v. Merit Distribution*, 445 F. Supp. 2d 899, 909 (W.D. Tenn. 2006).

    a.   *§ 1981 Claims as to Fred Smith*

The Defendants' first objection to the R & R states that "the R & R should have addressed the liability of Mr. Smith, an individual, separately from the business entities." (ECF No. 44, 6.) Specifically, they note that Drake's complaint distinguishes the bases of alleged liability for the corporate entities and Smith personally. The corporate entities liability is based on an alleged contract "with 'FedEx' for the delivery of an unidentified package and the conduct of Brewster in the parking lot[.]"  Smith's alleged liability is based on an "obligation" owed to Drake "through FedEx's contractual relationship with Plaintiff" and Smith's failure to reply to an email Drake sent him about the incident, which Drake alleges constituted a refusal to contract. (*Id.*) The Defendants argue that there was no contract between Drake and Smith and that Smith cannot be liable for any alleged contract Drake had with a FedEx entity, since "the shareholder and contracting officer of a corporation has no rights and is exposed to no liability under the corporation's contracts." (*Id.* at 6-7) (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 477 (2006)).

The Magistrate Judge concluded that Drake had sufficiently alleged a § 1981 claim but did not draw distinctions between Smith and the corporate defendants, instead treating all as the "FedEx Defendants". Upon review, the Court finds that this was an error.  Drake fails to allege a

contract between himself and Smith.  His complaint only mentions a contract between Drake and "FedEx," clearly the corporate entities.  Drake pleads separately against Smith along two theories: First, Drake alleges that Smith "refused to contract with Plaintiff by not responding to Plaintiff's immediate email seeking assistance." (ECF No. 16, 28.) This is not a basis for a contract, and it is questionable if it even qualifies as an offer to make one. Even if it did, nothing about Smith's non-response suggests intentional discriminatory conduct on his part. Drake has not properly plead a contract with Smith individually.

Second, Drake could potentially hold Smith individually liable under § 1981 if the alleged contract he had with the FedEx corporate defendants somehow applied to Smith.  Even if a contract existed, Drake has not plead a basis on which to apply that contract to Smith, who is the Executive Director of the Board of one of the companies sued (and as addressed later, not the company Drake's claims are properly brought against). Further, Drake has not plausibly alleged that Smith was personally involved in the discrimination he faced from Brewster, or that Smith directed or endorsed the conduct.[3] *Wagner*, 445 F. Supp. 2d at 909.  Accordingly, the Court **REJECTS** the portion of the R & R that finds Drake has asserted a § 1981 claim against Smith individually. Drake's individual claims against Smith are **DISMISSED**.

b.  *§ 1981 Claims as to FedEx Corporation and FedEx Corporate Services*

---

[3] While case law states that, at some point, supervisors may be personally liable where they have knowledge of an act of discrimination and fail to remedy or prevent that act, Smith is clearly not the type of supervisor these precedents discuss. *See Wagner*, 445 F. Supp. 2d at 909 (noting that "personal involvement, within the meaning of this concept, includes not only direct participation in the alleged violation but also gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring.") (quoting *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004)). Drake does not allege that Smith somehow oversaw this individual driver, and it is unclear from the Amended Complaint and FedEx's corporate structure whether Smith would have supervisory authority over any individual employee at all, given that he is a Board member and not actively involved in day-to-day management of the company. The complications of corporate law that would arise from extending this language to a Board member of a large conglomerate such as FedEx are immense, and the Court declines to do so.

The Defendants argue that the Magistrate Judge improperly found that Drake stated a § 1981 claim against FedEx Corporation and FedEx Corporate Services. First, they argue that Drake did not make or enforce a contract with either of the Defendants. (ECF No. 44, 8.) Second, they argue that, assuming a contract was made, neither Defendant denied or failed to provide services to Drake in a "markedly hostile" manner as required to state a claim under § 1981. (*Id.* at 9.) Drake does allege that he "had a contract with FedEx to deliver a package to him." (ECF No. 16, 19.) However, the Defendants assert that "Cole Brewster was not a representative of either FedEx Corporation or FedEx Corporate Services" because it is clear from "his truck and his shirt" that Brewster was "delivering packages to the UPS store on behalf of FedEx Ground, an entirely separate company." (ECF No. 44, 9.) Drake inserted three relevant pictures into his complaint: one of a person (allegedly Brewster) dressed in a FedEx Ground uniform, and two of the alleged truck Brewster was driving, which is adorned with FedEx Ground branding. (ECF No. 16, 14-15.) Defendants also argue that any contract Drake had to deliver his package must have been with FedEx Ground, given the evidence in the complaint and the fact that the two Defendant companies do not deliver packages at all.

Upon a review of the record, the Court finds that Drake has not adequately alleged a contract with either of the corporate FedEx defendants named here. It seems apparent that Drake has named the incorrect entity within his complaint, as evidenced by FedEx's corporate structure and the pictures he attached to the complaint. However, at this stage, Drake has adequately plead all elements of a prima facie § 1981 case against FedEx Ground when applying the liberal interpretation afforded to *pro se* pleadings and viewing all alleged facts in his favor. Drake has clearly alleged that he had a contract to receive a package from FedEx at the UPS store. (ECF No. 16, 12.) Based on the Complaint, it is plausible that Drake was receiving some service from

Brewster (namely checking if Brewster had his package or possibly having that package delivered) and received that service in a "markedly hostile" manner, as Brewster's actions were clearly "racially charged." *Wood v. U.S. Bank National Association*, No. 5:17CV2234, 2019 WL 1255229, at *3 (N.D. Ohio Mar. 19, 2019) ("courts examining cases brought under the 'markedly hostile manner' theory have typically required 'racially charged conduct' to establish a prima facie case of discrimination.") Drake notes that he had trouble speaking with Brewster and that Brewster was immediately combative. (ECF No. 16, 13.) The Defendants attempt to distinguish Drake's case from others by arguing that Brewster's words "were spoken after both Drake and Brewster had completed their business in the UPS store, in a parking lot not owned or controlled by any of these Defendants." (ECF No. 44, 10.)  Construing the facts in the light most favorable to Drake, the Court cannot endorse Defendants disjointed view of the situation.  Drake alleges the incident began outside the store, continued inside the store, and *culminated* in the racist language used outside. (ECF No. 16, 12-13.)  Language allegedly utilized by Brewster throughout the interaction would clearly create a racially hostile and potentially violent situation. Further factual development would be needed to determine whether that interpretation is correct, and if so, how FedEx Ground addressed the incident.  Also, it would allow FedEx Ground to offer any evidence regarding their process or to help further clarify Brewster's employment with the company. At this stage, the Court must address only the pleadings. Drake has adequately plead a § 1981 claim against FedEx Ground.

Accordingly, the Court **ADOPTS** this portion of the R & R, **with the condition that Drake file a Second Amended Complaint within 30 days which names only FedEx Ground as a defendant** and otherwise complies with all of this Order's holdings, including dropping all dismissed claims and omitting all stricken portions of the Amended Complaint.  Failure to do so,

or submission of a Complaint that includes any dismissed Defendants, inclusion of additional defendants, or inclusion of any stricken portions of the Amended Complaint, will be deemed a failure to adequately allege a claim and lead to dismissal of the case.

4.   *The Report and Recommendation Regarding the Declaratory Judgment Claim*

   The Magistrate Judge found that the Defendants' Motion did not support a basis for dismissing Drake's claim for Declaratory Judgment outside of their arguments regarding lack of jurisdiction, which the Magistrate Judge rejected. (ECF No. 40, 21.) The Defendants argue that their Reply to Drake's Response provided an alternative reason for dismissing the Declaratory Judgment Claim, specifically that Drake merely seeks an impermissible advisory opinion from the Court that is duplicative of his other counts. (ECF No. 44, 11-12.) Drake requests declaratory judgment on two statements: "(1) the brutal and intentional race discriminative remarks by a FedEx representative were the proximate cause of the injuries suffered by Plaintiff; (2) Plaintiff suffered compensable injuries and damages as a result of Race Discrimination by a FedEx representative and FedEx CEO, Frederick Smith." (ECF No. 16, 83.)

   Federal courts have "unique and substantial discretion in deciding whether to declare the rights of litigants" under the Declaratory Judgment Act, which Drake cites as the basis for this claim. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995). The Sixth Circuit has previously announced five factors to consider when determining whether to provide a declaratory judgment:

(1) whether the declaratory action would settle the controversy;
(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"
(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
(5) whether there is an alternative remedy which is better or more effective.

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (quoting *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984)).  *See also AmSouth Bank*, 386 F.3d at 785; *Bituminous Cas. Corp. v. J & L Lumber Co*., 373 F.3d 807, 812-13 (6th Cir. 2004).

Drake's request is not a typical request for Declaratory Judgment, because he is essentially asking the Court to grant him Declaratory Judgment on underlying elements of his substantive claims. There is an obvious alternative remedy that would be better or more effective: issuing a final decision and judgment on those claims through proper litigation practice and procedure. After reviewing the record, the Court concludes that Drake's arguments in support of his Motion for Declaratory Judgment are inappropriate and unpersuasive. Drake's request for Declaratory Judgment is duplicative of his other claims and demonstrates an attempt to gain advantage or "procedurally fence" around developing arguments. Accordingly, the Court **REJECTS** this portion of the R & R and **DISMISSES** Drake's claim for Declaratory Judgment.

5.   *The Report and Recommendation Regarding Drake's State Law Claims*

The Magistrate Judge declined to recommend that Drake's state law claims be dismissed, due to the Defendants' only arguing that this Court did not have supplemental jurisdiction over them. (ECF No. 40, 21.) However, Defendants argue in their objections that "should the Court determine that Drake has stated a claim under § 1981 and exercise supplemental jurisdiction over state law claims, Counts 4 (Breach of Contract), 9-11 (Negligence/Gross Negligence), 12 (Tennessee Consumer Protection Act), 15 (Tennessee Human Rights Act) and 22 (IIED) should, nevertheless, be dismissed on the merits." (ECF No. 44, 13.) Since the Court has determined that Drake stated a claim under § 1981, the Court will now consider Defendant's arguments regarding the state law claims.

As a preliminary matter, the Defendants argue that Texas state law would apply to all of Drake's claims. This is because the underlying incident happened in Texas, Brewster was presumptively a resident of Texas, and Drake is allegedly a Georgia resident who uses a P.O. Box in Texas as his mailing address. (*Id.*) A federal district court must apply the choice-of-law rules of the state in which it sits when determining which State's laws apply to a given case. *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009). Accordingly, the Court will apply Tennessee choice-of-law rules. For contracts, Tennessee applies the rule of "lex loci contractus," meaning that the Court must apply the law of the state where the contract was made, unless there is evidence of a different intent. *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999). For torts, Tennessee has adopted the "most significant relationship" test, which requires the Court to determine which state has the most significant relationship "to the occurrence and the parties" by considering four different contacts: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992) (quoting Restatement (Second) of Conflict of Laws § 145 (1971)).

Applying both tests, it is clear that Texas law governs all of Drake's state law claims. Regarding the contract, it is not clear where the alleged contract to deliver the package was made. However, all signs point to Texas, given that the package was to be delivered there and Drake was physically present to receive it. Further, there is no evidence of a different intent, and Drake himself cites Texas law under his breach of contract claim. (ECF No. 16, 46.) Regarding Drake's tort claims, Texas has the most significant relationship to the events at issue. The incident occurred in Texas, the conduct causing the injuries occurred in Texas, and the relationship between Drake

and FedEx here was clearly centered around Texas. Accordingly, the Court will apply Texas law to Drake's state law claims. This requires that Drake's claims under the Tennessee Consumer Protection Act (Count 12) and the Tennessee Human Rights Act (Count 15) be **DISMISSED**, as Tennessee law does not apply to the injuries alleged here. The Court will address the remaining state law claims below.

### a. *Breach of Contract*

The Defendants argue that Drake's Breach of Contract claims should be dismissed because "there was no contract with any of the named Defendants in this case" and because "Drake admits that he received his package thereby fulfilling the underlying contract." (ECF No. 44, 13.) Further, they note that Frederick Smith would not be liable for any breach of contract committed by a FedEx corporate entity.

Drake's claims are not related to FedEx breaching the alleged contract to deliver the package, but instead providing services pursuant to the contract in a markedly hostile and racist way.  Indeed, Drake himself states that "[w]hether the Plaintiff ultimately received his package is not the issue." (ECF No. 16, 42.) While Drake does allege that he "had a contract with FedEx to deliver a package to him," he does not allege that the contract was breached through non-delivery. (*Id.* at 19.) Further, Drake does not assert that the contract stated anything about the behavior of the driver fulfilling it. Since delivery is the only term of the contract alleged, Drake's multiple protestations that "Brewster breached Plaintiff's contract with FedEx by his aggressive and hurtful words" are in conflict with his one and only statement of what he alleges the contract actually stated. Accordingly, Drake's breach of contract claims are **DISMISSED**.

### b. *Intentional Infliction of Emotional Distress*

Under Texas law, intentional infliction of emotional distress ("IIED") is a "gap-filler tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (citing *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)). Wherever a plaintiff may state a claim for recovery under an existing common law or statutory remedy, including federal ones, IIED is not available as a remedy.

Here, Drake has stated a claim under § 1981. Accordingly, an existing statutory remedy exists to address the harm he alleges he suffered. He has not stated a claim for IIED under Texas law. Thus, his claims for IIED are **DISMISSED**.

### c. *Negligence/Gross Negligence*

Finally, Drake asserts claims of "Common Law Negligence," "Malice," and "Negligent Retention," which are more accurately characterized as Negligent Hiring, Negligent Supervision, and Negligent Retention Claims against FedEx as a result of employing Brewster. (ECF No. 16, 54-59.) While Texas has "not ruled definitively on the existence, elements, and scope" of a negligent hiring claim, courts "have recognized that it is 'factually similar' to a claim for negligent entrustment." *Endeavor Energy Resources, L.P. v. Cuevas*, 593 S.W.3d 307, 311 (Tex. 2019) (quoting *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 n.27 (Tex. 2010) and *Wansey v. Hole*, 379 S.W.3d 246, 248 (Tex. 2012)). Thus, "a negligent-hiring claim requires negligence by two separate parties: the employer's negligence in hiring the employee and the employee's subsequent negligent act or omission," both "must proximately cause the injury." *Id.* (citing *Wansey*, 379 S.W.3d at 247.) Stated another way, "to prevail on a claim for negligent hiring or supervision, the plaintiff is required to establish not only that the employer was negligent in hiring

20

or supervising the employee, but also that the employee committed an actionable tort against the plaintiff." *Wansey*, 379 S.W.3d at 247 (quoting *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 384 (Tex. Ct. App. 2005)).

Drake's claims for negligent hiring and supervision must fail because he has not adequately alleged any underlying actionable torts against Brewster.   Instead, Drake's adequately stated claims are all statutory in nature, under § 1981. Accordingly, his claims of negligence are **DISMISSED**.

6. <u>*The Report and Recommendation Regarding Defendants' Motion to Strike*</u>

The Defendants' Motion to Strike sought to strike multiple paragraphs from the Amended Complaint under Rule 12(f) as "immaterial and scandalous matter." The Magistrate Judge agreed with the Defendants and admonished Drake to "conduct himself with the civility and professionalism worthy of this Court, both in his filing and in his communications with opposing counsel[.] (ECF No. 40, 24-25.) The Defendants agree with these findings but seek to modify the Magistrate Judge's findings and strike additional paragraphs from the complaint.[4] The Defendants allege that the Amended Complaint "remains littered with immaterial and redundant allegations that Mr. Smith is a racist, legal argument and citations from other jurisdictions, and rambling paragraphs with 'no possible relation to the controversy.'" (ECF No. 44, 15) (quoting *Hill v. Accordia Life & Annuity Co.*, No. 21-CV-2241, 2021 WL 5435250, at *2 (W.D. Tenn. Nov. 19, 2021)). In total, the Defendants request that paragraphs 3-10, 45-46, 48-49, 69-74 (as to personal attacks on Smith, discussion of churches and racism in Mississippi), 106-107, 120, 123-124, 135, 143, and 203 (as to legal arguments and citations), as well as Exhibits D, G, and J, be stricken.

---

[4] The Magistrate Judge ordered paragraphs 52-57, 154, and 227-242 stricken. (ECF No. 40, 24.)

Upon review of these paragraphs and exhibits, the Court agrees with the Defendants. These paragraphs and exhibits largely consist of Drake's commentary on race relations in America, both past and present, personal attacks against Frederick Smith, newspaper clippings regarding FedEx's prior firing of an employee who mocked the murder of George Floyd, and unrelated discussion of modern politics. Given the history of the United States, some may consider Drakes' view of American history to be somewhat interesting or in some ways accurate. However, it is inappropriate and just plain wrong to include such history and insulting personal attacks as legal arguments and claims. Drakes' personal views and opinions have no place in a lawsuit such as the one pending before this Court. The Amended Complaint is a legal document related to Drake's claims, not a platform for all of his personal thoughts on issues he believes his claims represent. Accordingly, the above requested paragraphs shall be **STRICKEN**, and Defendants' request granted.

## IV.    CONCLUSION

In summary, the Court:

- **ADOPTS** all portions of the R & R not objected to, resulting in:

  o Drake's Title II claims being **DISMISSED**.

  o All Judicial Defendants being **DISMISSED**.

  o Drake's Motion for Sanctions being **DENIED**.

- **ADOPTS** the following portions of the R & R objected to:

  o The Magistrate Judge's recommendation that Drake has not established diversity jurisdiction under § 1332 is **ADOPTED.**

  o The Magistrate Judge's recommendation that Drake has stated a claim under § 1981 is **ADOPTED**, with the condition that Drake refile the

complaint **naming <u>only FedEx Ground</u>** as a defendant within 30 days of the entry of this order.  Failure to comply with this directive to refile will result in dismissal.

- **MODIFIES** the following portions of the R & R:

  o The Proposed Findings of Fact are modified to reflect the distinctions between FedEx Corporate Services, FedEx Ground, FedEx Corporation, and Fred Smith.

  o The Proposed Findings of Fact are modified to reflect that the facts of the case are contained in paragraphs 29-44 of the Amended Complaint.

  o The Magistrate Judge's recommendation to decline to rule on Drake's state law claims is modified to hold that all of Drake's state law claims are **DISMISSED**.

  o The Magistrate Judge's recommendation to **GRANT** Defendants' Motion to Strike is modified to strike, in total, paragraphs 3-10, 45-46, 52-57, 69-74 (as to personal attacks on Smith, discussion of churches and racism in Mississippi), 106-107, 120, 123-124, 135, 143, 154, 203 (as to legal arguments and citations), 227 (on page 91), 228-242, as well as Exhibits D, G, and J.

- **REJECTS** the following portions of the R & R:

  o The Magistrate Judge's recommendation that Drake has stated a claim under § 1981 against Fred Smith is **REJECTED**, and all claims against Smith are **DISMISSED**.

o   The Magistrate Judge's recommendation that Drake has stated a claim for Declaratory Judgment is **REJECTED**, and Drake's claims for Declaratory Judgement are **DISMISSED**.

**IT IS SO ORDERED** this 5th day of December, 2022.

_s/ John T. Fowlkes, Jr._____
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE

24